UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CURTIS LEE WATSON,

    Petitioner,

v.                                                 Case No: 5:12-CV-491-OC-27PRL

WARDEN, FCC COLEMAN - USP I,

    Respondent.
_____/

## ORDER DENYING PETITION

Petitioner Curtis Lee Watson ("Petitioner"), proceeding *pro se,* initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). Petitioner's amended petition is presently before this Court (Doc. 6). At the time he filed his petitions, Petitioner was an inmate at the Federal Correctional Complex in Coleman, Florida serving a sentence of thirty-years to life for convictions from the Superior Court for the District of Columbia ("D.C. Superior Court"). Petitioner challenges an order from the United States District Court for the District of Columbia that dismissed a civil rights complaint in which he asserted that the Bureau of Prisons ("BOP") had no authority to recalculate his sentence and that an ex post facto violation occurred when the United States Parole Commission ("Commission") applied 1987 and 2000 guidelines at Petitioner's parole hearings (Doc. 6 at 6).

I.     Background[1]

On August 10, 1978, the D.C. Superior Court sentenced Petitioner, in case number 91888-76,

---

[1] The background facts surrounding Petitioner's D.C. Superior Court sentences are taken from the Eleventh Circuit's opinion in *Watson v. Warden, FCC Coleman-USP I*, 521 F. App'x 899 (11th Cir. 2013).

to: two terms of 5-15 years for burglary while armed (Counts A & D), running consecutively to each other; two additional 5-15 year terms for assault with a dangerous weapon (Counts F & I), running concurrent with each other and to Count D; and a 40-month to 10-year term for assault with intent to kill (Count C), running concurrently with Count A. The total aggregate term for this case was ten to thirty years of imprisonment.

Also on August 10, 1978, in case number 69971-77, the D.C. Superior Court sentenced Petitioner to a term of twenty years for murder in the first degree while armed; and a one-year sentence for carrying a pistol while armed. Both sentences were to run consecutively to the sentences imposed in case number 91888-76. Accordingly, Petitioner's sentences were aggregated to a minimum term of thirty years and a maximum term of life imprisonment.

On August 29, 1988, Petitioner escaped from confinement while serving his sentence at the D.C. Correctional Facility at Lorton.[2] He was re-arrested by members of the United States Marshal Service for the District of Arizona on October 31, 1995. On March 15, 1996, Petitioner was sentenced in the United States District Court for the Eastern District of Virginia to twelve months' incarceration for escape, to run consecutively to any other present or previous sentences.

Petitioner's first parole hearing took place in 2004 (Doc. 11-1 at 9-11). The hearing examiner determined that the guideline range was 334 to 348 months to be served before Petitioner was eligible for parole. *Id.* The Commission denied parole and continued the case for three years. *Id.* at 12-13. A Commission hearing examiner conducted the reconsideration hearing in October of 2007 and decided to grant Petitioner parole after the service of 353 months. *Id.* at 19. However, because the BOP had mistakenly neglected to deduct time spent on escape status, the Commission voided the decision to grant parole. *Id.*

---

[2] The prison closed in 2001, and D.C. inmates are now housed in BOP facilities.

On October 21, 2011, a Commission hearing examiner conducted a new initial hearing (Doc. 11-1 at 20-23). The hearing examiner determined that Petitioner's parole guideline range was 346 to 360 months to be served. *Id.* On November 30, 2011, the Commission issued its decision to reconsider parole in October of 2014.[3]

## II.  Petition

It is difficult to decipher the claims set forth by Petitioner in this petition. The introductory statement to his five-page pleading reads:

> PETITIONER CHALLENGES AS UNCONSTITUTIONAL THE USE OF THE "NATIONAL CAPITAL REVITALIZATION.. [sic] ACT" AND ITS USE BY THE B.O.P THAT GIVES RISE THAT THIS ACT WAS TO IMPLY THAT "ALL" DISTRICT OF COLUMBIA PRISONER COULD ONLY BE RELEASED FROM THEIR D.C. TERMS BY THE AUTHORITY OF THE UNITED STATES PAROLE COMMISSION. THE PURPOSE OF THIS CHALLENGE IS THE RELEASE METHOD, BASED ON TWO RECENT DISTRICT OF COLUMBIA FEDERAL COURT RULINGS THAT FIND "OLD LAW" D.C. PRISONERS HAVE NO STANDING PURSUANT TO 1972 D.C. CODE FOR PAROLE. . . .

(Doc. 1 at 1). Petitioner seems to take issue with the outcome of a case he filed in the United States District Court for the District of Columbia against the Commission in which he challenged the Commission's authority to grant or deny him parole and to apply its own parole guidelines to his case. In that case, the district court concluded that Petitioner also raised an ex post facto claim based upon the Commission's application of later-adopted parole laws instead of the parole laws that were in effect at the time he committed his offenses. *Watson v. United States Parole Comm'n*, 869 F.Supp.2d 145 (D.D.C. 2012). The complaint was dismissed. *Id.*

Upon review of the instant pleading, it appears that Petitioner may seek to raise three claims: (1) the Commission unconstitutionally applied later-adopted laws to Petitioner's parole consideration

---

[3] The record does not contain information as to whether the reconsideration hearing occurred. Nevertheless, the outcome of such hearing is not before the Court at this time.

instead of the laws that were in effect at the time he committed his offenses (ex post facto violation); (2) the BOP was not authorized to recalculate Petitioner's sentence; and (3) the BOP miscalculated his sentence (Doc. 1 at 1-5). Petitioner requests immediate release from prison. *Id.* at 5.

Respondent asserts that Petitioner is not entitled to relief (Doc. 11). Specifically, Respondent argues that: (1) the petition is successive and an abuse of the writ of habeas corpus; (2) the claims should be dismissed under principles of res judicata; and (3) the Commission is authorized by law to grant or deny parole for D.C. Code sentenced felons. *Id.* at 7-11.

In reply, Petitioner asserts that the United States Supreme Court's ruling in *Peugh v. United States*, 133 S. Ct. 2072 (2013) supports a conclusion that the United States Parole Commission committed an ex post facto violation when it considered Petitioner's parole under its own guidelines (Doc. 13).

### III. Discussion

#### a. *No ex post facto violation occurred when the Commission applied the 2000 guidelines at Petitioner's parole hearings*

The United States Constitution prohibits the enactment of an ex post facto law. U.S. Const. art. 1, § 9, cl. 3. The Ex Post Facto Clause bars enactments, which by retroactive application, increase the punishment for a crime that has already been committed. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990). The Supreme Court has found that a change to parole policy may violate the Ex Post Facto Clause if it "creates a significant risk of prolonging [an inmate's] incarceration." *Garner v. Jones*, 529 U.S. 244, 251 (2000).

Under regulations promulgated in 1972 and in effect at the time of Petitioner's crimes (the "1972 Regulations"), the D.C. Parole Board took into account some of the following factors in making its determination as to parole:

(a) The offense, noting the nature of the violation, mitigating or aggravating circumstances and the activities and adjustment of the offender following arrest if on bond or in the community under any presentence type arrangement.

(b) Prior history of criminality noting the nature and pattern of any prior offenses as they may relate to the current circumstances.

(c) Personal and social history of the offender, including such factors as his family situation, educational development, socialization, marital history, employment history, use of leisure time and prior military experience, if any.

(d) Physical and emotional health and/or problems which may have played a role in the individual's socialization process, and efforts made to overcome any such problems.

(e) Institutional experience, including information as to the offender's overall general adjustment, his ability to handle interpersonal relationships, his behavior responses, his planning for himself, setting meaningful goals in areas of academic schooling, vocational education or training, involvements in self-improvement activity and therapy and his utilization of available resources to overcome recognized problems. Achievements in accomplishing goals and efforts put forth in any involvements in established programs to overcome problems are carefully evaluated.

(f) Community resources available to assist the offender with regard to his needs and problems, which will supplement treatment and training programs begun in the institution, and be available to assist the offender to further serve in his efforts to reintegrate himself back into the community and within his family unit as a productive useful individual.

9 D.C.R.R. ch. 2, § 105.1 (1972). Under these rules, the D.C. Parole Board "operated with nearly complete discretion." *Austin v. Reilly.* 606 F.Supp.2d 4, 8 (D.D.C. 2009). *Foster v. United States Bureau of Prisons*, Case No. 14-1188, 2014 WL 3512615, at *1 (D.D.C. July 15, 2014) ("[The 1972 parole] guidelines were open ended and left the decision of whether to grant parole almost entirely to the discretion of the D.C. Parole Board[.]").[4]

---

[4] In 1981, the District of Columbia promulgated new parole regulations (the "1981 Regulations"), but the language of § 105.1 remained unchanged. 9 D.C.R.R. ch. 2, § 105.1 (1981). Under both the 1972 and 1981 Regulations, "the Board had no formalized scoring system. . . . The decision to grant parole remained within the discretion of the Board." *Davis v. Henderson*, 652 A.2d 634, 635 (1995).

In 1985, the D.C. Board of Parole adopted guidelines to channel its discretion; these guidelines were published and codified in 1987 (the "1987 Regulations"). *Sellmon v. Reilly*, 551 F.Supp.2d 66, 69–71 (D.D.C. 2008); D.C. Mun. Regs. tit. 28, § 204 (1987). The 1987 regulations relied upon an analytical framework that looked at specific pre-incarceration and post-incarceration factors to arrive at a baseline point score upon which the parole board could rely when considering a prisoner's eligibility for parole. *See Sellmon*, 551 F.Supp.2d at 69-71.

Between 1998 and 2000, the Commission drafted new parole regulations and guidelines (the "2000 guidelines") that applied to any offender who received an initial parole hearing after August 5, 1998. *Sellmon*, 551 F.Supp.2d at 71. These regulations are currently in effect and enumerated at 28 C.F.R. § 2.80 (2010). Similar to the 1987 regulations, the 2000 guidelines use a point system to determine whether a candidate is presumptively suitable for parole. *Sellmon*, 551 F.Supp.2d at 72–73.

Petitioner broadly asserts that his right to be free from ex post facto laws has been violated because the change in parole policy has effectively abolished parole for old-law prisoners (Doc. 1 at 5). Petitioner contends that the recent Supreme Court ruling in *Peugh* supports his contention that the application of the 2000 guidelines to his parole "changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed[.]" (Doc. 13 at 1). Other than re-asserting that the BOP miscalculated his minimum sentence, Petitioner does not explain how the application of the 2000 guidelines subjected him to a longer period of incarceration.

Petitioner raised an identical ex post facto claim in his District of Columbia suit against the Commission. *See Watson v. United States Parole Com'n*, 869 F.Supp.2d at 145.[5] District Judge

---

[5] In his District of Columbia case, Petitioner brought a civil rights action against the Commission in which he argued *inter alia* that the Parole Commission lacked authority to grant parole and that the application of the 2000 guidelines resulted in an ex post facto violation. Petitioner's claims were dismissed in a detailed opinion. *Watson v. United States Parole Comm'n*, 869 F.Supp.2d at 148-49. Respondent urges that Petitioner's instant claims should now be dismissed as res judicata because they have already been decided on the merits in the District Court of the District of Columbia (Doc. 11 at 8). Indeed, under the principle of res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Montana v. United States*, 440 U.S. 147, 153 (1979).

John Bates compared the Commission's guidelines and the regulations promulgated by the former District of Columbia Board of Parole and dismissed the claim, observing:

> Nothing in the record of this case suggests that the former Parole Board's regulations apply to plaintiff. "[A] plaintiff may invoke *ex post facto* protection only on the basis of the parole regime that was in effect at the time he committed his offense[s]." Plaintiff committed his offenses in or about 1976, years before the Parole Board promulgated the regulations at issue in *Sellmon*. At the time plaintiff committed the offenses for which he now is serving his sentence, "parole eligibility was determined by a D.C. Parole Board that operated with nearly complete discretion," subject only to regulations promulgated by the Parole Board in 1972. Given the "totally unfettered" discretion under which the Parole Board operated in those days, the Court cannot conclude that plaintiff would have fared better under a prior regime.

*Id.* at 150 (internal citations omitted). This Court sees no reason to depart from Judge Bates' considered analysis and similarly concludes that the application of the 2000 guidelines to Plaintiff's parole does not create a significant risk of a longer period of incarceration than under the earlier regulations. *See Garner*, 529 U.S. at 255 ("When the rule does not by its own terms show a significant risk [of a longer period of incarceration], the [petitioner] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule."); *United States v. Wetherald*, 636 F.3d 1315, 1323 (11th Cir. 2011) (recognizing that an ex post facto violation occurs only when application of later-imposed rules "results in a substantial risk of harsher punishment."). Likewise, Petitioner's reliance on *Peugh* is unavailing. There, unlike here, the retroactive application of sentencing guidelines did, in fact, subject the criminal defendant to a longer period of incarceration. *See Peugh*, 133 S. Ct. at 2084-85. Petitioner's ex post facto claim is without merit.

---

However, the doctrine of res judicata does not generally apply to habeas petitions. *Schlup v. Delo*, 513 U.S. 298, 317-19 (1995) ("This Court has consistently relied on the equitable nature of habeas corpus to preclude application of strict rules of res judicata."). Accordingly, the Court will not dismiss these claims on the basis of res judicata. However, the conclusions of the District Court of the District of Columbia will be reviewed and considered when reviewing Petitioner's instant habeas claims.

### b. *The Bureau of Prisons had authority to recalculate Petitioner's sentence*

Under the National Capitalization Revitalization and Self–Government Improvement Act of 1997 (the "Revitalization Act"), the custody of inmates such as Petitioner who were initially incarcerated under the D.C. Code was transferred to the BOP. D.C. Code §§ 24–101(a), 24-131(a)(2); 111 Stat. 251, 734 (1997). The Revitalization Act further provided that the Lorton Correctional Complex, which had been the primary facility for the housing of D.C. Code offenders, would be closed. Specifically, the Revitalization Act includes a provision stating:

> [A]ny person who has been sentenced to incarceration pursuant to the District of Columbia Official Code . . . shall be designated by the Bureau of Prisons to a penal or correctional facility operated or contracted for by the Bureau of Prisons, for such term of imprisonment as the court may direct. *Such persons shall be subject to any law or regulation applicable to persons committed for violations of laws of the United States consistent with the sentence imposed.*

D.C. Code § 24-101(a) (emphasis added). Since the passage of the Revitalization Act, the BOP calculates the sentences of D.C. Code offenders and determines their release dates.

Petitioner argues that "when Congress created the National Capitol Revitalization Act in 1997, it only gave the B.O.P. the authority to house D.C. felons . . . never was the right to 'convert' D.C. sentences was approved." (Doc. 1 at 3). Petitioner now asserts, without coherent explanation, that "the converting of D.C. sentences by the Bureau of Prisons is without any legal authority and for the first time is being challenged in a federal court of law." *Id.* at 2.[6] To the extent Petitioner argues that the Revitalization Act did not authorize the BOP to recalculate his sentence or to grant or deny his parole, he is mistaken. As noted above, the Revitalization Act subjected D.C. Code offenders to the same laws and regulations as other BOP prisoners. Moreover, under D.C. Code

---

[6] Any argument that Petitioner's term of thirty years to life was converted to a definite term of life has already been addressed by the Eleventh Circuit Court of Appeals which stated that "[n]othing in the record supports Watson's claim that his indefinite aggregate term of thirty years to life has been converted by the BOP to a definite term of life." *Watson*, 521 F. App'x at 903.

§24-131, exclusive jurisdiction of parole matters over D.C. felons was transferred from the Board of Parole of the District of Columbia to the Commission. *See Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998) (Congress transferred the authority of the D.C. Board of Parole to the U.S. Parole Commission pursuant to the Revitalization Act); D.C. Code § 24-131(a)(1) ("Not later than one year after August 5, 1997, the United States Parole Commission shall assume the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Official Code."); *United States v. Savage*, 737 F.3d 304, 308-09 (4th Cir. 2013) ("The Revitalization Act was, by its plain terms, not a contractual provision for confinement, but the full vesting of all aspects of custody in the BOP over D.C. offenders.").

There is no merit to Petitioner's claim that the BOP has no legal authority to recalculate his sentence.

### c.   *Petitioner's claim that the BOP miscalculated his sentenced is successive*

In the past twelve years, Petitioner has filed numerous petitions and complaints with this Court and with other federal district courts, most of which challenge his continued confinement and the denial of parole.[7] In 2009, while still incarcerated at FCC Coleman, Petitioner filed two § 2241

---

[7] *See e.g.* case numbers 5:03-cv-61-Oc-10GRJ (§ 2241 petition challenging the BOP's calculation of Petitioner's parole eligibility date); 5:03-cv-105-Oc-10GRJ (civil rights action alleging that Petitioner is being held beyond his statutory release date); 5:03-cv-365-Oc-10GRJ (civil rights action seeking damages for Petitioner's illegal incarceration); 5:04-cv-5-Oc-10GRJ (§ 2241 petition challenging his underlying conviction from the District of Columbia; 5:04-cv-27-Oc-10GRJ (§ 2241 habeas petition challenging Petitioner's parole eligibility date); 5:04-cv-290-Oc-10GRJ (§ 2241 petition challenging his convictions and sentences from the District of Columbia); 5:04-cv-520-Oc-10GRJ (§ 2241 challenging his underlying conviction); 5:05-cv-49-Oc-10GRJ (§ 2241 petition asserting that the BOP miscalculated his parole eligibility date); 5:05-cv-297-Oc-10GRJ (petition for Writ of Error Coram Nobis challenging his underlying conviction); 5:05-cv-369-Oc-10GRJ (§ 2241 petition challenging convictions and sentences from the District of Columbia); 5:06-cv-415-Oc-10GRJ (petition for Writ of Error Coram Nobis challenging Petitioner's underlying conviction) 5:08-cv-543-Oc-10GRJ (§ 2241 petition challenging Petitioner's parole eligibility date); 5:08-cv-564-Oc-10GRJ (§ 2241 petition challenging Petitioner's underlying conviction); *see also* Northern District of West Virginia Case No. 1:14-cv-114 (§ 2241 petition raising similar claims as the instant petition).

petitions, which were consolidated for disposition. In those petitions, Petitioner asserted that both his sentence and his parole eligibility date had been improperly calculated and that he was entitled to immediate release. See *Watson v. Warden, FCC Coleman-USP I*, Case Nos. 5:09-cv-112-Oc-10TBS, 5:09-cv-200-Oc-10TBS, 2012 WL 5465993, at *1-2 (M.D. Fla. May 3, 2012). This Court concluded that both Petitioner's D.C. sentence and parole eligibility date had been "properly computed." *Id.* at *2. On appeal, Petitioner argued that "his 'old law sentences,' that is, the 1978 D.C. Superior Court sentences, were 'converted to a federal term of *life*.'" *Watson v. Warden, FCC Coleman-USP I*, 521 F. App'x at 903. The Eleventh Circuit concluded that "[n]othing in the record supports Watson's claim that his indefinite aggregate term of thirty years to life has been converted by the BOP to a definite term of life." *Id.* Petitioner also claimed that he was only required to serve "19 years and 8 months," and that he was entitled to immediate release. *Id.* However, the Eleventh Circuit noted that Petitioner was required to serve, at a minimum, thirty years of his D.C. aggregated sentence; that Petitioner had not completed that sentence; and that Petitioner had "yet to serve his consecutive twelve-month sentence for the 1996 escape conviction." *Id.*

Petitioner now asserts that all his sentences "maxed out at (20) years under old law" and that he is entitled to immediate release (Doc. 1 at 3). This claim has already been denied by this Court and by the Eleventh Circuit. Successive § 2241 petitions by federal prisoners are subject to threshold dismissal in the district courts. *Antonelli v. Warden, USP Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008). Specifically, 28 U.S.C. § 2244(a) provides:

> No circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for writ of habeas corpus, except as governed in section 2255.

*Id.* Moreover, federal courts have concluded that, notwithstanding any limitations on § 2244(a),

a successive identical habeas petition may be subject to dismissal as an abuse of the writ. *See, e.g., Davis v. Fechtel*, 150 F.3d 486, 491 (5th Cir. 1998) ("we need not determine whether the gate-keeping provisions of the AEDPA [apply to Petitioner's third § 2241 petition] because it clearly constitutes an abuse of the writ either under our pre—or post—AEDPA jurisprudence."); *Shore v. Warden, Stateville Prison*, 942 F.2d 1117, 1123 (7th Cir. 1991) (applying the law of the case doctrine to successive habeas petitions); *Raulerson v. Wainwright*, 753 F.2d 869, 875 (11th Cir.1985) (same); *see also McCleskey v. Zant*, 499 U.S. 467, 482 (1991) (recognizing that where a petitioner has filed successive habeas petitions in more than one district court, the dismissal of the first habeas petition is of "vital relevance" to later court determinations of whether to consider similar petitions).

Because this claim has already been denied by this Court and by the Eleventh Circuit, the claim is successive and an abuse of the writ. This Court declines to re-examine Petitioner's arguments that the BOP miscalculated his sentence and that he is entitled to immediate release.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. Conclusion

For the foregoing reasons, Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus is **DENIED** and **DISMISSED** with prejudice. The **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment accordingly.

**DONE AND ORDERED** in Tampa, Florida on January 5th, 2015.

JAMES D. WHITTEMORE
United States District Judge

SA: OrlP-4
Copies to:
Curtis Lee Watson
Parties of Record